**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson**

Civil Action No. 21-cv-01372-RBJ

WILLIAM DONNELL III,

      Applicant,

v.

EDDIE CALEY, Warden, CTCF, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

**ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS**

---

      This matter is before the Court on the amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 4), filed *pro se*, by William Donnell III ("Applicant"), on June 10, 2021. Having considered the Respondents' Answer (Doc. No. 15), Applicant's Reply (Doc. No.18), and the state court record, the Court denies the Application.

**I. Factual and Procedural Background**

      In November 2015, Applicant was convicted by a jury of first degree murder after deliberation in Crowley County District Court case number 13CR5. (State Court Record ("R), Court File at 664). He was sentenced to life imprisonment. (*Id.*). The Colorado Court of Appeals summarized the evidence at Applicant's trial as follows:

      In the early morning hours of February 19, 2013, Tara

Martinez[1] was found shot to death in a trailer she shared with Donnell, her boyfriend. Police immediately suspected Donnell and obtained a warrant for his arrest. But he was nowhere to be found.

The victim and Donnell had a troubled relationship that included domestic violence. Just days before the victim's death, Donnell allegedly attempted to strangle her with a belt. One witness also described an incident where Donnell purportedly woke the victim in the middle of the night, pointed a gun at her face, and told her he was going to kill her.

The victim often confided in her best friend, Shanda Flick. In fact, the night before she was killed, the victim spent the night with Flick. After the victim left in the morning, Flick became concerned when she learned that the victim had not called her son, Curtis Martinez. Flick reached out to the victim's other friends and family, several of whom unsuccessfully attempted to contact her. A few people contacted Donnell, who told them that he and the victim had a fight at their trailer but that she had left around noon.

Still unable to find her, Flick and a few others drove to the trailer that same night. They saw Donnell's green Pontiac parked outside, but no one answered the door when they knocked. Jorge Martinez, the victim's brother, testified that he saw Donnell inside the trailer. The group decided to drive a short distance away and call the police. But by the time police arrived, Donnell's car was gone. An officer knocked on the door, looked inside a window, and told the group that he did not see anyone inside.

Flick and the others returned home, but she remained concerned. She called several persons close to the victim — including Ruben Martinez (the victim's other brother) and Robert Penrod (Curtis's father) — to ask if they would come with her to check the trailer again. They drove back to the trailer, broke in through the back door, and discovered the victim's body in the bedroom. When police returned to the trailer shortly thereafter, investigators recovered a bullet beneath her body and later determined that the gun used to kill her was a .41 caliber revolver.

---

1 The Colorado Court of Appeals' decision includes the following footnote: "The victim shares a surname with multiple witnesses in this case. To avoid confusion, we will refer to some people by their first names. We mean no disrespect." (Doc. No. 15-1 at 3 n. 1).

Four months later, Donnell was apprehended while attempting to cross the U.S.–Mexico border into California under an assumed name. He was returned to Colorado and charged with murder. The first attempt at empaneling a jury in May 2015 was unsuccessful. After the court changed venue, the trial began in November 2015.

At trial, an expert witness for the prosecution opined that, in relationships marred by domestic violence, the potential for lethal outcomes is highest when one partner attempts to pull away. Text messages between Donnell and the victim showed that she was considering ending their relationship. The jury also heard testimony that a .41 caliber revolver is an unusual firearm made by only a few manufacturers. Though the murder weapon was never recovered, a neighbor testified that Donnell had tried to sell him a stolen .41 caliber revolver a short while before the murder. A jury instruction also permitted the jury to consider evidence of Donnell's flight as circumstantial evidence of guilt.

The defense emphasized the lack of physical evidence tying Donnell to the crime and the circumstantial nature of the prosecution's case. After the three-week trial, the jury convicted him of first degree murder.

(Doc. No. 15-1 at 3-6).

The Colorado Court of Appeals affirmed Applicant's convictions in *People v. William John Donnell III,* No.16CA425 (Colo. App. Dec. 26, 2019) (unpublished opinion). (*Id.*). Mr. Donnell's petition for certiorari review was denied by the Colorado Supreme Court on June 22, 2020. (Doc. No. 15-5).

Applicant initiated this § 2254 proceeding on May 19, 2021. He asserts the following claims for relief:

(1) Applicant's right to confrontation under the Sixth and Fourteenth Amendments was violated by the state trial court's refusal to allow extrinsic evidence to impeach police detective Mark Morlock with a false statement he allegedly made in a prior investigation. (Doc. No. 4 at 4.).

(2) Applicant's right to confrontation under the Sixth and Fourteenth Amendments was violated by the state trial court's refusal to allow the defense to impeach witness Shanda Flick with a dismissed drug charge. (*Id*. at 5).

(3) Applicant's rights under the Fifth and Fourteenth Amendments were violated by the state trial court's failure to articulate its reasons for rejecting the parties' proposed plea agreement. (*Id*.).

(4) Applicant's constitutional right to due process was violated under the doctrine of cumulative error. (*Id*.).

In the Pre-Answer Response (Doc. No. 12), Respondents stated that they did not intend to raise the procedural defense of untimeliness or failure to exhaust state court remedies. The case was then drawn to the undersigned for determination of the merits.

## II. Applicable Legal Standards

### A. 28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the court must answer under § 2254(d)(1) is whether the

applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time of the relevant state court decision. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision. *Id*. *Williams*, 529 U.S. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or (b) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent. *Maynard* [*v. Boone*], 468 F.3d [665], 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 562 U.S. at 101 (internal quotation marks omitted). In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision and then ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Harrington*, 562 U.S. at 88 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 562 U.S. at 102.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *Smith v. Duckworth,* 824 F.3d 1233, 1241 (10th Cir. 2016). The court "must defer to the state court's factual determinations so long as 'reasonable minds reviewing the record might disagree about the finding in question.'" *Smith*, 824 F.3d at 1241 (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Nevertheless, "if the petitioner can show that 'the state courts plainly misapprehend[ed] or misstate[d] the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable.'" *Smith,* 824 F.3d at 1241 (alterations in original) (internal quotation marks and citation omitted).

Pursuant to § 2254(e)(1), the court presumes that the state court's factual determinations are correct and the applicant bears the burden of rebutting the

presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller- El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If § 2254(d) is overcome or does not apply, the claim must be evaluated *de novo*. *See, e.g., Cargle v. Mullin*, 317 F.3d 1196, 1206 (10th Cir. 2003); *Bland v. Sirmons*, 459 F.3d 999, 1010 (10th Cir. 2006).

### B. *Pro Se* Litigant

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* status does not entitle an applicant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### III. Analysis of Claims

### A. Claims 1 and 2

In claim one, Applicant asserts that his right to confrontation under the Sixth and Fourteenth Amendments was violated by the state trial court's refusal to allow extrinsic evidence to impeach police detective Mark Morlock with a false statement he allegedly made in a prior investigation. (Doc. No. 4 at 4.).

For his second claim, Applicant contends that his confrontation rights were violated when the trial court prohibited the defense from impeaching witness Shanda Flick with a dismissed drug charge. (*Id.* at 5).

### 1. Applicable Supreme Court law

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (internal quotation marks omitted). The Supreme Court has recognized that "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but [is also] . . . allowed to impeach, i.e., discredit, the witness." *Id.* at 316.

"[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences

relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680

(1986) (quoting *Davis*, 415 U.S., at 318). That standard is met if a "reasonable jury

might have received a significantly different impression of [the witness's] credibility had

[defense] counsel been permitted to pursue his proposed line of cross-examination." *Id*.

The Confrontation Clause does not prevent the trial court from imposing any

limits on cross-examination. *See Van Arsdall*, 475 U.S. at 679. Trial judges have wide

discretion "to impose reasonable limits on such cross-examination based on concerns

about, among other things, harassment, prejudice, confusion of the issues, the witness'

safety, or interrogation that is repetitive or only marginally relevant." *Id.* "[T]he

Confrontation Clause guarantees an opportunity for effective cross-examination, not

cross-examination that is effective in whatever way, and to whatever extent, the defense

might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in

original). The Supreme Court "has never held that the Confrontation Clause entitles a

criminal defendant to introduce extrinsic evidence for impeachment purposes." *Nevada

v. Jackson*, 569 U.S. 505, 512 (2013).

"Confrontation Clause errors[ are] subject to . . . harmless-error analysis." *Van

Arsdall*, 475 U.S. at 684. Therefore, if a petitioner establishes a violation of his Sixth

Amendment rights, federal habeas relief is not warranted unless the constitutional error

"had substantial and injurious effect or influence in determining the jury's verdict." *Brecht

v. Abrahamson*, 507 U.S. 619, 631 (1993). *See also Littlejohn v. Trammell,* 704 F.3d

817, 844 (10th Cir. 2013) (stating that when a federal court considers a Confrontation

Clause violation in a habeas proceeding, the relevant harmless error analysis is the *Brecht* standard) (citing *Jones v. Gibson*, 206 F.3d 946, 957 (10th Cir. 2000)).

**2. Claim One**

**a. state court proceeding**

The Colorado Court of Appeals rejected Applicant's first claim for relief on the following grounds:

> The trial court prohibited Donnell from presenting extrinsic evidence regarding the lead investigator's credibility. Donnell asserts that this was error. We are not convinced.

> A. Additional Facts

> The lead investigator, Mark Morlock, testified for the prosecution. On direct, he admitted that he had once been placed on administrative leave because he had been dishonest to a superior regarding the location of his squad car. The prosecution then asked:

> Q. (By Prosecutor) You've been up front about not being straight with your supervisor part. Have you ever been accused of being untruthful in any criminal investigative report?

> A. (By Morlock) Never in my life.

> In fact, he had been accused of being untruthful in a previous criminal investigation. According to the defense, a fellow officer claimed that Morlock had represented that he had interviewed a witness when he had not done so.

> The prosecution objected to Donnell's attempt to address that matter on cross-examination, and defense counsel told the court that he planned to introduce a report and a witness (Agent Pat Crouch) to contradict Morlock's testimony. The court permitted defense counsel to ask Morlock about his alleged dishonesty but prohibited the use of extrinsic evidence on that point.

> On cross-examination, defense counsel questioned Morlock

11

about the accusation. Morlock acknowledged that he never conducted the interview but denied telling Crouch that he had done so. After a series of follow-up questions, Morlock stated, "I'm very defensive, because it's not a true allegation."

After Morlock testified, defense counsel renewed the request to call Crouch, contending that the extrinsic evidence of Morlock's alleged dishonesty was admissible under the doctrine of specific contradiction. The trial court disagreed. It reasoned that the doctrine did not apply because the defense opened the door to the issue of dishonesty. After ruling that the evidence was inadmissible under CRE 608(b), the court also concluded that the proposed evidence created an undue risk of jury confusion under CRE 403.

(Doc. No. 15-1 at 13-15).

The Colorado Court of Appeals determined that the trial court did not abuse its discretion in disallowing the extrinsic evidence proffered by the defense because the specific contradiction doctrine did not apply:

The specific contradiction doctrine provides that, where a party elicits a statement from a witness, that party opens the door to the admission of extrinsic evidence from the opposing party to contradict that statement — even though the contradictory evidence is inadmissible under Rule 608(b) or the collateral-matter doctrine.

In this case, Donnell sought to introduce a report and a witness, Crouch, to prove a specific instance of Morlock's alleged dishonesty. Because the report and witness were extrinsic evidence, they were inadmissible unless the doctrine of specific contradiction applied. *Id*. at ¶ 43; *see also People v. Segovia*, 196 P.3d 1126, 1130 (Colo. 2008) (A witness's "answer to any question is intrinsic evidence, while the admission of any documents or calling of other witnesses constitutes extrinsic evidence.").

[On cross exam] [d]efense counsel . . . elicited Morlock's testimony that the earlier accusation against him was not true (i.e., that he had not lied in that investigation). Then, defense counsel wished to present extrinsic evidence showing that Morlock had lied in that investigation. Such evidence was inadmissible, however, because it would not have specifically contradicted Morlock's direct examination testimony. Instead, it

12

would have contradicted only his cross-examination testimony elicited by the defense, and "a party cannot open its own door to create an opportunity for the admission of otherwise inadmissible evidence." *People v. Kessler*, 2018 COA 60, ¶ 44.

(*Id.* at 16-19).

### b. AEDPA analysis

The Colorado Court of Appeals' factual determinations are presumed correct, are supported by the state court record[2] and Applicant does not point to any clear and convincing evidence to the contrary. Because Applicant fails to identify any unreasonable factual finding by the state court, he is not entitled to relief under 28 U.S.C. § 2254(d)(2).

Further, the Colorado Court of Appeals' decision was not contrary to or an unreasonable application of Supreme Court law. As set forth above, the Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes." *Nevada v. Jackson*, 569 U.S. at 512. Moreover, the state trial court did not prohibit the defense from confronting the witness with the allegation that he made a false statement in a prior investigation. Instead, the state court placed limitations on the scope of that area of cross-examination, which were based on state court evidentiary rules and did not constitute an unreasonable application of *Van Arsdall*. Therefore, Applicant has failed to show an entitlement to relief under § 2254(d)(1).

Claim one of the amended Application will be dismissed.

---

2 *See* R., 11/17/15 Tr. at 67-70, 154-60; 11/19/15 Tr. at 106-114.

**3. Claim 2**

**a. state court proceeding**

The Colorado Court of Appeals resolved Applicant's second claim for relief on

the following grounds:

> Donnell contends that the trial court committed constitutional error when it precluded him from asking Flick about a criminal charge against her that was dismissed before trial. We disagree.

> A. Additional Facts

> The prosecution called Flick, who testified to many of the facts detailed above. She was one of the witnesses who described the domestic violence in the victim and Donnell's relationship, including the alleged strangling. She recounted her efforts to find the victim after she became concerned that something had happened to her, identified Donnell in court, and testified that Donnell's Pontiac was parked at the trailer earlier on the night they found the victim's body but was gone later. She also testified on direct examination that she saw the victim and Donnell together the day the victim was killed.

> On cross-examination, defense counsel pressed Flick on several alleged inconsistencies between her trial testimony and the earlier reports she had given to police, noting that her testimony was more detailed than those reports. Flick admitted that she never actually saw the victim and Donnell leave Flick's home together because Flick was sleeping when the victim left that morning. She maintained, however, that she heard the victim leave and knew that she left with Donnell. Defense counsel also questioned Flick regarding her conviction for forging a check.

> Defense counsel then attempted to ask Flick about a charge against her for methamphetamine possession that was dropped a few months before trial. Defense counsel asserted that Flick had lied to the police during that investigation, and that the defense had a witness available to impeach Flick. The prosecutor objected to the question and explained that the charge had been dismissed for lack of probable cause. The court sustained the objection, defense counsel ended the examination, and Flick was dismissed subject to recall.

Donnell argues that the court's ruling violated his confrontation rights by preventing any inquiry into whether the dismissed charge biased Flick in favor of the prosecution.

. . . .

## C. Analysis

Defendants in previous cases have successfully stated a confrontation violation where "the trial court's ruling, under the circumstances of each case, effectively barred the defendant from meaningfully testing evidence central to establishing his guilt." *Krutsinger v. People*, 219 P.3d 1054, 1062 (Colo. 2009); *cf. Kinney* [v.*People*], 187 P.3d [548,] 559 [(Colo. 2008)]. (Judges have "wide latitude under the Confrontation Clause to impose reasonable limits on cross-examination."). In *Van Arsdall*, for instance, the Court discerned a confrontation violation only because the trial court prohibited 'all inquiry' into the possibility of prosecution bias by a witness . . . and because a 'reasonable jury might have received a significantly different impression of [that witness's] credibility'" if the jury had heard the excluded evidence. *Krutsinger*, 219 P.3d at 1062 (quoting *Van Arsdall*, 475 U.S. at 679-80). But "the defendant in this case was not prohibited from demonstrating motive or bias on the part of the witness or from exposing to the jury . . . any additional facts from which they could draw inferences relating to her reliability." *Id*.

Defense counsel pointed out that Flick's testimony contained more details than her initial reports to police. The jury could thus infer that Flick invented details after the fact to support her version of events. She even contradicted herself on cross-examination by admitting that she never saw Donnell and the victim leave her house together. In addition, the jury heard evidence of Flick's forgery conviction — a prototypical act of dishonesty.

Moreover, defense counsel drew attention to Flick's potential motives to testify against Donnell: Flick and the victim were best friends, Flick was aware of the domestic violence in the relationship between the victim and Donnell, and Flick unsuccessfully urged the victim to report that abuse to the police. The jury could infer from Flick's close relationship with the victim that, consciously or unconsciously, she might favor the prosecution.

Evidence of the dismissed charge against Flick therefore would not have countered any "reasonable, but false, inferences" that she was an

15

otherwise credible witness. *Cf. Merritt v. People*, 842 P.2d 162, 168 (Colo. 1992) (Witnesses with pending charges "appeared to confess under oath."). At best, such evidence would have merely provided the jury with one other piece of evidence with which to assess Flick's credibility.

Finally, the impeachment value of the dismissed charge was weaker than that of a pending charge, where a witness may hope for leniency from the prosecution in exchange for her favorable testimony. *See Kinney*, 187 P.3d at 560-61 (discussing a pending charge). Given the extensive cross-examination of Flick's credibility and the marginal probative worth of the dismissed charge, it is unlikely that the jury would have had a significantly different impression of Flick's credibility had the question been allowed.

We therefore perceive no violation of Donnell's rights under the Confrontation Clause. *See Krutsinger*, 219 P.3d at 1062 ("It does not follow, of course, that every restriction on a defendant's attempts to challenge the credibility of evidence against him, or even every erroneous evidentiary ruling having that effect, amounts to federal constitutional error.").

We further conclude that any error was harmless beyond a reasonable doubt. *See id*. at 1060. In determining whether a confrontation violation requires reversal, we consider "the importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of corroborating or contradictory evidence on the material points of the witness' testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case." *Merritt*, 842 P.2d at 169.

At trial, other witnesses corroborated all the material points of Flick's testimony. Her account of Donnell's domestic violence against the victim was corroborated by two other witnesses. In addition, both Flick and Jorge Martinez testified that Donnell's car was at the trailer earlier on the evening of the murder. Flick's description of the final trip to the trailer — when they discovered the victim's body — also was corroborated by other witnesses.

Donnell himself admitted in his phone calls with Penrod and Ruben that he had been with the victim earlier in the day, and several of his text messages indicated that the victim had left the trailer, implying that she had been there with him. Jorge, but not Flick, testified that he saw Donnell inside the trailer the night of her murder. Flick did not testify to Donnell's

flight, his possession of the .41 caliber revolver, or any of the physical evidence at the scene of the crime. Flick merely provided a summation of the piecemeal testimony of other witnesses.

Therefore, this is not a case in which the "defense's explanation appears as likely as the prosecution's theory of the case" without Flick's testimony. *Id*. Any potential error was therefore harmless beyond a reasonable doubt.

(Doc. No. 15-1 at 6-13).

### b. AEDPA analysis

The Colorado Court of Appeals applied controlling Supreme Court standards in determining Applicant's confrontation clause claim. Therefore, the Court must determine whether that application was reasonable.

Evidence that prosecution witness Flick lied to the police in connection with a criminal charge that was dismissed for lack of probable cause before Applicant's trial does not tend to show that Flick was biased against the Applicant or in favor of the prosecution. Instead, the line of questioning was more of a "general attack" on Flick's credibility. *See Davis*, 415 U.S. at 316, 320 (distinguishing questions "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand" from a "general attack" on witness credibility and holding that only the former was protected by the Sixth Amendment); *see also id*. at 321 (Stewart, J., concurring) (emphasizing that "the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness"). Moreover, *Van Arsdall* recognizes that the trial court may impose reasonable limits on cross-examination without running afoul of the Sixth Amendment.

17

As discussed by the Colorado Court of Appeals, defense counsel thoroughly cross examined witness Flick about her relationship with the victim, the inconsistencies between her trial testimony and her statements to the police, and her prior forgery conviction. The trial court's limitation on cross-examination concerning lies Flick told the police in connection with a drug charge that was dismissed prior to Applicant's trial did not significantly impede counsel's ability to challenge the "believability of [the] witness and the truth of h[er] testimony." *Davis*, 415 U.S. at 316.

The Court finds that the Colorado Court of Appeals' determination that Applicant's Sixth Amendment confrontation rights were not violated by the trial court's restriction on the cross examination of witness Flick was a reasonable application of *Davis, Van Arsdall* and *Fensterer*.

The state appellate court also concluded that any constitutional error resulting from the trial court's restriction on cross examination of Flick was harmless. Even if there was a constitutional error at Applicant's trial, he is not entitled to federal habeas relief unless he demonstrates that the Colorado Court of Appeals' harmless error determination was an unreasonable application of Supreme Court law and that he was actually prejudiced by the trial court's exclusion of the specific questions on cross examination, under *Brecht. See Malone v. Carpenter*, 911 F.3d 1022, 1030 (10th Cir. 2018) (citing *Davis v. Ayala*, 576 U.S. 257, 269-70 (2015)).

In determining whether error was harmless in the context of a Confrontation Clause violation, the court considers factors such as the "importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the

presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684.

Flick's testimony was critical to the prosecution's case and was corroborated by other witnesses on material points. Flick was subject to a lengthy cross examination regarding inconsistencies between her trial testimony and her statements to the police as well as her bias toward the victim, who was her best friend. In addition, the prosecution's case against Applicant, although based largely on circumstantial evidence, was strong. Witnesses testified that Applicant had physically abused the victim and strangled her from behind with a belt less than one week before the murder. One witness testified that on another occasion the Applicant put a gun in the victim's face and threatened to kill her. The victim's body was found in the trailer shared by Applicant and the victim. Applicant's green Pontiac was at the trailer the first time witnesses went to check on the victim, but was gone when witnesses returned later and discovered the victim dead in the bedroom. A shell casing found at the scene matched the type of revolver that Applicant possessed and had tried to sell a neighbor a few days before the murder. Finally, Applicant disappeared the morning after the murder, his cell phone went dark, and he was not seen again for four months when he attempted to cross the border from Mexico into the U.S. under an assumed name.[3]

---

3 *See generally* R., 11/12/15 Tr., Testimony of Jacob Friedenberger, Shanda Flick; 11/13/15 Tr., Testimony of Melissa Sandoval, Robert Penrod; 11/16/15 Tr., Testimony of Margarita Gonzales, Ruben Martinez; 11/17/15 Tr., Testimony of Mark Morlock; 11/18/15 Tr., Testimony of Alicia Vallerio, Shadowhawk Tiger, Christina Bik, and Randy Watts; 11/19/15 Tr., Testimony of Jorge Martinez.

The Colorado Court of Appeals' factual findings in support of its harmless error analysis are supported by the state court record. The Court finds that the state appellate court reasonably applied the *Van Arsdall* harmless error analysis in denying Applicant relief. The Court further concludes, under *Brecht*, that the trial court's refusal to allow defense counsel to cross examine Flick about a lie she told the police in relation to a drug charge that was dismissed prior to Applicant's trial did not have a substantial and injurious effect on the jury's verdict. Therefore, Applicant is not entitled to relief under § 2254(d)(1).

Furthermore, Applicant does not contend that the Colorado Court of Appeals' decision was based on unreasonable factual determination that would warrant relief under § 2254(d)(2).

Claim Two of the amended Application will be dismissed.

## B. Claim 3

In claim three, Applicant asserts that his rights under the Fifth and Fourteenth Amendments were violated by the state trial court's failure to articulate its reasons for rejecting the parties' proposed plea agreement. (Doc. No. 4 at 5).

### 1. State Court Proceedings

The state court record reflects that before trial, the state trial court set a plea cut-off deadline of July 7, 2014. (R., Court File, 3/11/14 minute order). Ten months later, the day before the commencement of trial, the parties presented the court with a proposed disposition off the record, which the court considered and ultimately rejected after discussing it with counsel for both parties. (R., 5/29/15 Trial Tr. at 62-63).

At the hearing following the court's rejection of the proposed plea agreement, the court brought up the fact that it had not yet placed its reasons for rejecting the agreement on the record, and explicitly invited defense counsel to address the matter with the court. (*Id.* at 62-63). The following colloquy ensued between the court and defense counsel:

> COURT: The Court is permitting counsel to address the Court related to matters that occurred yesterday, and the Court just wants to make a statement for the record related to that.
>
> The Court was approached by the representatives of the District Attorney's office . . . yesterday morning indicating that they had permission to address the Court ex parte. They communicated to the Court a proposed disposition in this case. [The] Court indicated that it wanted time to think about that disposition. Subsequent to that, the Court had conversation separately with both [of defense counsel] also related to the prospective plea agreement. Ultimately, the Court indicated through its Clerk, but not on the record, that it was not accepting the proposed and tendered plea agreement, and that that is at least part of the reason the Court is certain that counsel want to address it today. So the Court will permit counsel to do so and raise other matters. No prospective member of the jury panel is present in the courtroom.
>
> So, [defense counsel], I'll let you proceed first, if you want to.
> …
>
> [DEFENSE COUNSEL]: I'm not going to address the Court's position as to the proposed plea bargain. The Court simply is not apparently willing to accept it now."

(*Id.* at 62-63, 65). Neither the court nor the parties addressed the plea agreement again.

The Colorado Court of Appeals did not reach the merits of claim three, concluding instead that Applicant waived the claim in the trial court. The Colorado Court of Appeals determined that "defense counsel waived the opportunity to have the trial court make additional findings by effectively communicating that defendant did not need

or want more explanation from the court." (Doc. No. 15-1 at 23).

### 2. Procedural Default

Respondents assert in their Answer that claim three is procedurally defaulted because Applicant failed to properly exhaust state court remedies. (Doc. No. 15 at 19-22). Respondents did not raise the procedural defense in the Pre-Answer Response (Doc. No. 12).

#### a. waiver/forfeiture of defense

"[S]tate-court procedural default . . . is an affirmative defense," and the state is "obligated to raise procedural default as a defense or lose the right to assert the defense thereafter." *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). A waived defense is one that a party has knowingly and intelligently relinquished. *See Wood v. Milyard*, 566 U.S. 463, 473, n.4 (2012) (internal citations omitted). Generally, an affirmative defense is forfeited if not raised in a defendant's answer or in an amendment thereto. *See id.*at 470 (internal citation omitted). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Womble v. Chrisman*, No. 21-7015, 2022 WL 334107, at *2 (10th Cir. Feb. 4, 2022) (unpublished) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted)).

Respondents argue in the Answer that they did not explicitly waive the defense by failing to raise it in the Pre-Answer Response because the omission was due to an oversight. (Doc. No. 15 at 20-21). The Court finds that there are no facts before it to suggest an intentional a waiver of the defense.

With regard to the issue of forfeiture, although the "best procedure is to plead an affirmative defense in an answer or amended answer," *Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006), a constructive amendment is allowed if there is no prejudice to the opposing party and the amendment is not unduly delayed, done in bad faith or with a dilatory motive. *Id.*

Applicant has not been prejudiced by Respondents' assertion of the procedural default defense in the Answer because he was afforded an opportunity to file a Reply. Moreover, the defense was raised less than two months after the Pre-Answer Response was filed and does not involve circumstances of bad faith or a dilatory motive. Therefore, the Court finds that Respondents have not forfeited the procedural default defense as to claim three by asserting it in the Answer. *See Hamlin v. Zavaras*, 11-cv-01386-CMA, 2012 WL 3129192, at *6 (D. Colo. July 31, 2012) (allowing belated assertion of exhaustion defense in § 2254 answer given applicant's opportunity to respond in a reply and absent any showing of undue delay, bad faith, or dilatory motive).

### b. applicability of defense

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 843 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). The exhaustion requirement is

satisfied once the federal claim has been presented fairly to the state courts. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).

Under the procedural default doctrine, a claim may not serve as a basis for habeas relief if it was rejected in state court on the basis of an "independent and adequate state ground." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). A petitioner's affirmative waiver of a claim in the state trial court constitutes a procedural default. *See Carbajal v. Williams*, 844 F. App'x 68, 74 (10th Cir. 2021) ("Here, the CCA refused to consider the propriety of allowing the statements because [the applicant] affirmatively waived any objection to them. That waiver constitutes a procedural default."). *See also People v. Tee,* 446 P.3d 875, 880 (Colo. App. 2018) (A "'waived' claim of error presents nothing for an appellate court to review.") (quoting *People v. Bryant*, 316 P.3d 18, 22 at n.2 (Colo. App. 2013)).

Here, the state court record demonstrates that Applicant procedurally defaulted claim three by waiving the claim in the trial court. To overcome the procedural bar, Applicant must demonstrate an external cause for the procedural default and resulting prejudice, or establish that a fundamental miscarriage of justice based on his actual innocence will occur if the Court does not reach the merits of his claim. *See Coleman*, 501 U.S. at 750; *Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007). Applicant does not state any facts in his Reply to meet the cause and prejudice or fundamental miscarriage of justice exception to overcome the procedural bar.

Claim three will be dismissed as procedurally barred.

### 2. Alternative merits analysis

In the alternative, the Court finds that claim three fails on the merits. The Court reviews claim three *de novo* because the Colorado Court of Appeals did not reach the merits. *See Cargle*, 317 F.3d at 1206; *Bland*, 459 F.3d at 1010.

A defendant's mere acceptance of a proposed plea bargain is insufficient to create a constitutional right to have that agreement enforced. *See Mabry v. Johnson*, 467 U.S. 504, 510-11 (1984), *abrogated on other grounds by Puckett v. United States*, 556 U.S. 129 (2009). There is "no absolute right to have a guilty plea accepted," and a court "may reject a plea in exercise of sound judicial discretion." *Santobello v. New York*, 404 U.S. 257, 262 (1971). *See also Missouri v. Frye,* 566 U.S. 134, 148-49 (2012) ("[A] defendant has no right to be offered a plea . . . nor a federal right that the judge accept it.") (internal citations omitted)). Further, the Supreme Court has never held that the federal Constitution requires federal or state trial courts to provide an on-the-record explanation of their specific reasons for rejecting a proposed plea agreement.

The Tenth Circuit Court of Appeals has held that, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, a federal district court should articulate on the record the reasons for exercising its discretion to reject a plea agreement. *See United States v. Rakes*, 510 F.3d 1280, 1286 (10th Cir. 2007) (citing Fed. R. Crim. P. 11(c)(3); *United States v. Robertson*, 45 F.3d 1423, 1438 (10th Cir.1995). However, a requirement derived from a federal procedural rule is not rooted in the federal Constitution or a federal statute applicable to the states, and, therefore, is not

redressable under 28 U.S.C. § 2254.[4] *See Freeman v. Page*, 443 F.2d 493, 497 (10th Cir.1971) (rejecting federal habeas petitioner's argument that Fed. R. Crim. P. 11 applies to state proceedings; "[t]his Federal procedural provision is not binding on the State Courts, . . . and there is no constitutional mandate for it.").

Like its federal counterpart, Colo. Crim. P. Rule 11 requires that "[t]he [state] trial court must consider all relevant factors and articulate the reasons for rejecting an agreement on the record." *People v. Darlington*, 105 P.3d 230, 232 (Colo. 2005). Failure to do so constitutes an abuse of discretion. *Id.*

Even if the trial court did not comply with Colo. Crim. P. 11 in Applicant's case, a state court's failure to follow its own rules will not give rise to habeas relief unless such failure also resulted in a violation of Applicant's federal due process rights. *See Ellis v. Mullin*, 56 F. App'x 858, 862 (10th Cir. 2003) (unpublished) (citing *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980) (denial of state statutory right to have jury decide the sentence violated federal due process); *see also Martinez v. Romero*, 626 F.2d 807, 810 (10th Cir.1980) (rejecting petitioner's claim that the State's failure to follow its own statutory criminal procedures constituted a deprivation of due process). Because the federal Constitution does not require a state court to accept a plea agreement,

---

4  To be entitled to relief under 28 U.S.C. § 2254, a habeas petitioner must demonstrate a violation of the federal Constitution or a federal statute. *See* 28 U.S.C. § 2241(c)(3); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).
.

Applicant's due process rights were not violated by the state court's failure to articulate on the record its reasons for rejecting the plea agreement in his case.

Claim three is subject to dismissal on the merits to the extent the claim is not procedurally barred.

### C. Clam Four

In claim four, Applicant maintains that his constitutional right to due process was violated under the doctrine of cumulative error. (Doc. No. 4 at 5).

The Tenth Circuit has questioned "whether a state appellate court's rejection of a cumulative error argument can justify federal habeas relief under the standards outlined in § 2254(d)" given that "the Supreme Court has never recognized the concept of cumulative error." *Bush v. Carpenter*, 926 F.3d 644, 686 at n.16 (10th Cir. 2019) (internal quotation marks omitted). Assuming such a claim is viable, "[i]n the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 915 (10th Cir. 2019) (internal quotation marks and citations omitted). "The applicant "must show that the cumulative effect of the errors determined to be harmless had a substantial and injurious effect or influence in determining the jury's verdict." *Id*. (internal quotation marks and citations omitted). However, the cumulative-error doctrine applies only "where there are two or more actual errors." *Id*. And it does not consider procedurally defaulted claims. *Id*. at 916.

The Colorado Court of Appeals rejected Applicant's cumulative error claim,

stating that "[b]ecause we have identified no error, there is no cumulative error." (Doc. No. 15-1 at 25).

This Court has concluded that, to the extent there was a Confrontation Clause error at Applicant's trial (as asserted in claim two), the error did not have a substantial and injurious effect on the jury's verdict. Because there is not more than one constitutional error to analyze under the cumulative error doctrine, the state appellate court's denial of relief was not unreasonable under § 2254(d)(1) or (d)(2).

Claim four of the amended Application will be dismissed.

## IV. ORDERS

For the reasons discussed above, it is

ORDERED that the amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 4), filed *pro se* by William Donnell, III, is DENIED and this action is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that no certificate of appealability shall issue because Applicant has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000). It is

FURTHER ORDERED that leave to proceed *in forma pauperis* is denied for the purpose of appeal. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal he must also pay the full $505

appellate filing fee or file a motion to proceed *in forma pauperis* in the United States

Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App.

P. 24.

DATED March 3, 2022.

BY THE COURT:

_____
R. BROOKE JACKSON
Senior United States District Judge